# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

PARADIGM CARE & ENRICHMENT CENTER, LLC, PARADIGM CARE & ENRICHMENT CENTER 2, LLC, CREATIVE PATHS LEARNING CENTER, INC., and CREATIVE PATHS INFANT CENTER, INC., individually and on behalf of all other similarly situated,

       Plaintiffs,

  v.

WEST BEND MUTUAL INSURANCE COMPANY,

       Defendant.

Case No.: 2:20-cv-00720-JPS

---

**DEFENDANT WEST BEND MUTUAL INSURANCE COMPANY'S
MEMORANDUM IN SUPPORT OF ITS MOTION
TO DISMISS PLAINTIFFS' COMPLAINT**

# TABLE OF CONTENTS

**Page**

INTRODUCTION.................................................................................................................1

BACKGROUND ...............................................................................................................4

    A.    Plaintiffs' Businesses and Coverage Allegations. ....................................... 4

    B.    Additional Details about the Michigan and Illinois Executive Orders. ................. 6

        1.    Michigan. ............................................................................ 6

        2.    Illinois. ............................................................................... 6

        3.    Village of Skokie, Illinois. ...................................................... 6

    C.    The West Bend Policies and the Special Property Coverage Form....................... 7

ARGUMENT ....................................................................................................................9

    A.    The Standard on a Motion to Dismiss.................................................... 9

    B.    The Interpretation of Insurance Policies under Michigan and Illinois Law. .......... 9

    C.    There is no Business Income or Extra Expense coverage because Plaintiffs have not sufficiently alleged "direct physical loss of or damage to property". ......................................................................................... 10

        1.    The Business Income and Extra Expense Coverages. ........................... 10

        2.    The requirement of "direct physical loss of or damage to property"........ 12

        3.    Plaintiffs' allegations of "direct physical loss of or damage to property" are insufficient to establish Business Income or Extra Expense coverage.................................................................. 16

            a.    Loss of use is not "direct physical loss of or damage to property". .................................................................. 16

            b.    Plaintiffs' allegations of damage to covered property are conclusory. .................................................................. 18

        4.    The requirement of a "period of restoration" is incongruous with Plaintiffs' allegation of "direct physical loss or damage to property". ...................................................................... 18

    D.    There is no Civil Authority coverage because Plaintiffs have not alleged damage to other property, and there is no prohibition of access in response to dangerous physical conditions arising out of such damage. ............................ 19

E.     There is no Communicable Disease Business Income and Extra Expense coverage because Plaintiffs fail to allege the shutdown or suspension of their operations was due to an outbreak at the insured premises. ......................... 23

F.     The Duties In The Event Of Loss Or Damage section does not grant coverage and is irrelevant to Plaintiffs' claims. .................................................... 25

G.     Even assuming an initial grant of coverage under the Business Income, Civil Authority, and Extra Expense coverages, the Virus Or Bacteria and Consequential Losses exclusions negate coverage. ............................................... 26

     1.     The Virus Or Bacteria Exclusion negates any possibility of coverage under the Business Income, Civil Authority, and Extra Expense coverages and the Duties In The Event Of Loss Or Damage section. ...................................................................................... 27

     2.     The Consequential Losses exclusion negates any possibility of coverage for plaintiffs' alleged loss of use of their covered property. ...................................................................................... 28

**CONCLUSION** ..................................................................................................................**29**

**Introduction**

Since its onset in late 2019, COVID-19[1] has spread rapidly around the world, causing far-reaching public health and economic consequences. Federal, state, and local governments have instituted broad measures to address COVID-19, ranging from direct economic assistance to Executive Orders restricting personal movement and business operations. Although unprecedented, the circumstances of the COVID-19 pandemic do not change what West Bend Mutual Insurance Company ("West Bend") issued in this case: policies of insurance that cover certain risks to property, subject to all terms and conditions of coverage and applicable exclusions, not a guarantee of income.

In this putative insurance coverage class action, Paradigm Care & Enrichment Center, LLC and Paradigm Care & Enrichment Center 2, LLC, (together "Paradigm Care") and Creative Paths Learning Center, Inc., and Creative Paths Infant Center, Inc. (together "Creative Paths") (collectively "Plaintiffs") contend their insurance policies provide coverage for alleged Business Income loss and Extra Expense incurred as a result of: (1) the "presence" of COVID-19; and (2) the issuance of certain Executive Orders by the State of Michigan, the State of Illinois, and the Village of Skokie, Illinois. Plaintiffs contend their alleged losses are covered under the following coverages or provisions: (1) Business Income coverage; (2) Extra Expense coverage;

---

[1] The virus that causes COVID-19 is officially named severe acute respiratory syndrome coronavirus 2 (SARS-CoV-2). *See* About COVID-19, https://www.cdc.gov/coronavirus/2019-ncov/cdcresponse/about-COVID-19.html (accessed July 1, 2020). The disease caused by the virus is officially named coronavirus disease (COVID-19). *See id.* For purposes of convenience, West Bend refers to the virus and the disease it causes as "COVID-19" throughout this Memorandum of Support.

(3) Civil Authority coverage; (4) Communicable Disease Business Income and Extra Expense coverage; and (5) the Duties in the Event of Loss or Damage section.[2]

Plaintiffs' allegations, however, do not fall within the coverages alleged. Further, under the circumstances, Plaintiffs cannot possibly establish coverage. And, even if Plaintiffs could meet their burden of showing an initial grant of coverage (which they cannot), most of Plaintiffs' claims would be precluded by: (1) a Virus Or Bacteria exclusion, which precludes coverage for loss or damage caused by or resulting from any virus; and (2) a Consequential Losses exclusion, which precludes coverage for loss or damage caused by or resulting from loss of use of property, as Plaintiffs allege occurred here.

The Court should dismiss this action now because:

*First*, there is no Business Income or Extra Expense coverage[3] because Plaintiffs do not allege any facts demonstrating tangible, material, or lasting physical loss of or damage to property. Therefore, Plaintiffs have not plausibly alleged that any "direct physical loss of or damage to property at the described premises" has occurred. At most, the Complaint contains only a conclusory allegation that the "presence" of COVID-19 caused direct physical loss of or damage to property by "damaging the covered property."

Plaintiffs also allege they were denied use of their property. Yet this allegation, too, is a mere self-serving conclusion, and it does not show "direct physical loss of or damage to property" because loss of use is a purely economic loss, not a "direct physical" loss. Moreover, even if loss of use could possibly constitute "direct physical loss of or damage to property",

---

[2] Plaintiffs refer to the Duties in the Event of Loss or Damage section as "Sue and Labor" coverage. Throughout this Memorandum, West Bend refers to the provision as the "Duties In The Event Of Loss Or Damage" section, which is consistent with the policy language.

[3] Although the Business Income and Extra Expense coverages are separate "additional coverages" under the Policy, the conditions for each coverage are similar. For purposes of convenience and economy, West Bend addresses them together throughout this Memorandum of Support.

2

Plaintiffs' allegations make clear that executive orders implicated in this case allowed childcare businesses like Plaintiffs' to remain open to serve children of essential workers, and Plaintiffs elected not to do so. Under these circumstances, there is no loss of use.

*Second*, there is no Civil Authority coverage because Plaintiffs do not allege any "damage to property other than property at the described premises." In fact, the Complaint contains no allegations whatsoever about other property. Nor do Plaintiffs allege that access to their properties or to the area immediately surrounding the other property is prohibited. Instead, Plaintiffs' allegations demonstrate that the executive orders implicated in this case allowed continued access to their premises, both for Plaintiffs themselves and for the children of essential workers. Further, Plaintiffs have not alleged that damage to other property created dangerous physical conditions and therefore cannot show that any actions of civil authority were taken in response to such conditions.

*Third,* there is no Communicable Disease Business Income and Extra Expense coverage because Plaintiffs have not alleged any facts demonstrating that an outbreak of COVID-19 occurred at their insured premises. With respect to Paradigm Care, the Complaint contains no allegations that any enrollees or staff member has been diagnosed with COVID-19. With respect to Creative Paths, the Complaint contains only an allegation that one enrollee and his or her parents were diagnosed with COVID-19, but those diagnoses occurred *after* Creative Paths closed. This compels the conclusion that Creative Paths was not ordered to shut down or suspend operations "due to" an outbreak at the insured premises. Because Plaintiffs have not plausibly alleged that an outbreak occurred at Plaintiffs' premises, nor that any alleged shutdowns or suspensions were causally related to an outbreak at Plaintiffs' premises, Plaintiffs cannot establish Communicable Disease Business Income and Extra Expense coverage.

*Fourth*, there is no coverage under the Duties in the Event of Loss or Damage section, because that provision grants no coverage. Instead, that provision creates duties incumbent on the insured in the event of a covered loss. Where, as here, Plaintiffs do not allege any covered loss or damage, the Duties in the Event of Loss or Damage section is irrelevant.

*Lastly*, even if Plaintiffs' allegations were sufficient to meet Plaintiffs' burden to establish an initial grant of coverage, the Policies contain Virus Or Bacteria and Consequential Losses exclusions which negate coverage under the alleged circumstances.

For those reasons and as described in further detail below, Plaintiffs have failed to state a claim upon which relief can be granted, and the Court should dismiss this action with prejudice.[4]

## **Background**

### A.     **Plaintiffs' Businesses and Coverage Allegations.**

Plaintiffs operate childcare facilities in Michigan (Paradigm Care) and Illinois (Creative Paths). Compl., ECF No. 1, ¶¶ 1-2, 13-14. Plaintiffs allege that, although Michigan's Governor issued an Executive Order permitting childcare facilities to continue serving children of critical infrastructure workers, Paradigm Care was "required" to "reduce operations as a result of" the Order. *Id.* at ¶¶ 29, 32. Plaintiffs allege that, although Illinois' Governor issued an Executive Order permitting emergency childcare facilities to serve children of essential workers, Creative

---

[4] In addition to moving to dismiss Plaintiffs' complaint, West Bend has moved to strike Plaintiffs' class allegations. In so doing, West Bend explains why, even if Plaintiffs' complaint survives dismissal (which it should not), Plaintiffs would still fail to plausibly allege that they can meet the requirements for class certification. Thus, consistent with long-standing authority from the Seventh Circuit and courts in this District, regardless of whether West Bend's motion to dismiss is granted, Plaintiffs' class allegations should be stricken. *See Cook Cty. Coll. Teachers Union, Local 1600, Am. Fed'n of Teachers, AFL-CIO v. Byrd*, 456 F.2d 882, 885 (7th Cir. 1972) (affirming dismissal of facially-deficient class allegations); *Bourbonnais v. Ameriprise Fin. Servs. Inc.*, No. 14-C-966, 2015 WL 12991000, at *7 (E.D. Wis. Aug. 20, 2015) (granting motion to strike facially-deficient class allegations). On the other hand, if the Court grants this motion to dismiss, the Court need not address West Bend's motion to strike class allegations. This is because, "[w]hen the plaintiff's own claim is dismissed, he can no longer be the class representative." *Collins v. Vill. of Palatine, Ill.*, 875 F.3d 839, 846 (7th Cir. 2017). So "the dismissal of [the named plaintiff's] claim ma[kes] the class-certification question irrelevant." *Id.*

4

Paths was required to close as a result of that order and an order from the Village of Skokie that pre-dated the Illinois Executive Order. *Id.* at ¶¶ 30, 32.

Plaintiffs allege that on or about March 23, 2020—three days after Creative Paths was allegedly required to close—Creative Paths learned that one of its active enrollees and the child's family had tested positive for COVID-19. *Id.* at ¶ 33. Plaintiffs do not, however, allege: (a) that the enrollee and his or her family were exposed to COVID-19 on Creative Paths' insured premises; (b) when the enrollee with the positive diagnosis last attended Creative Paths' facilities; *or* (c) that any of Creative Paths' staff have tested positive for, or been exposed to, COVID-19. With regard to Paradigm Care, Plaintiffs do not allege that any of its active enrollees or staff have tested positive for, or been exposed to, COVID-19, nor do they allege that any persons were exposed to COVID-19 at Paradigm Care's premises.

Nevertheless, Plaintiffs submitted claims to West Bend seeking coverage for Business Income loss and Extra Expense incurred "[a]s a result of the presence of COVID-19 and the Closure Orders." *Id.* at ¶¶ 10, 41. West Bend determined the Policies do not provide coverage for those claims and advised Plaintiffs accordingly. *Id.* Plaintiffs filed this putative class action suit on May 12, 2020. *See id.* at 28.

Plaintiffs contend West Bend breached its coverage obligations under the Policies with respect to the Business Income, Civil Authority, Extra Expense, and Communicable Disease Business Income and Extra Expense coverages, as well as the Duties in the Event of Loss or Damage section. *Id.* at ¶¶ 53-95. Plaintiffs seek declaratory judgment that their alleged losses incurred in connection with the executive orders and the interruption of their businesses stemming from COVID-19 are covered losses under the foregoing coverages and provisions, and

5

that West Bend is obligated to pay the full amount of the Business Income losses and Extra Expense incurred and to be incurred. *Id.* at ¶¶ 96-130.

**B.     Additional Details about the Michigan and Illinois Executive Orders.**

1.     Michigan.

On or about March 23, 2020, Michigan Governor Gretchen Whitmer issued an Executive Order requiring residents "to suspend activities that are not necessary to sustain or protect life" (the "Michigan Executive Order"). *Id.* at ¶ 29. Governor Whitmer designated childcare workers as critical infrastructure "to the extent necessary to serve the children or dependents of critical infrastructure workers." *Id.* The Michigan Executive Order was effective as of March 24, 2020 through April 13, 2020, was extended to April 30, 2020, and was extended again to May 15, 2020. *Id.* Those extensions continued the exception that childcare providers may serve the children and dependents of critical infrastructure workers. *Id.*

2.     Illinois.

On or about March 20, 2020, Illinois Governor J.B. Pritzker issued an Executive Order requiring residents to "stay at home or at their place of residence" and closing non-essential businesses (the "Illinois Executive Order"). *Id.* at ¶ 30. Childcare centers were allowed to operate and serve children of essential workers upon obtaining an emergency childcare license. *Id.* The Illinois Executive Order was effective March 21, 2020 through April 7, 2020, was extended to April 30, 2020, and was extended again to May 30, 2020. Those extensions continued the emergency childcare licensing program. *Id.*

3.     Village of Skokie, Illinois.

Plaintiffs allege that on or about March 18, 2020, the Village of Skokie, Illinois (the "Village") required all childcare programs to close effective March 20, 2020 (the "Village Closure Order"). *Id.* at ¶¶ 31-32. On March 23, however, the Village sent a notice to "all child

6

care centers and child care homes" rescinding the Village Closure Order and allowing childcare

entities to reopen pursuant to the Illinois Executive Order.  The notice provides, in pertinent part:

> As you are aware, in order to limit the spread of COVID-19, all childcare centers and childcare homes within the Village of Skokie were closed by order effective March 20, 2020.  Governor Pritzker similarly ordered closure of these entities, effective March 21, 2020.  The Village of Skokie has the authority pursuant to Section 18 of the Executive Order to issue our own policies and directives, and to enact provisions stricter than those in the Executive Order.
>
> The Village of Skokie continues to believe that the most prudent action is for childcare providers to remain closed …. However, the Governor's Executive Order 2020-10, has allowed for these entities to reopen as Emergency Childcare Centers and Emergency Childcare Homes.  If, after careful assessment, you are planning to reopen in one of these capacities, you must follow the guidance provided in the attached document from the State of Illinois.  <u>You must also notify the Skokie Health Department that you intend to reopen</u>.

*See* https://www.skokie.org/DocumentCenter/View/3128/VOS-Emergency-Childcare-Centers-

and-Childcare-Homes-PDF?bidId= (emphasis in original) (accessed July 1, 2020).[5]

### C.    The West Bend Policies and the Special Property Coverage Form.

West Bend issued a policy numbered 1364094 09 for the policy period of August 23,

2019 to August 23, 2020 to Paradigm Care, and a policy numbered A050584 04 for the policy

period August 26, 2019 to August 26, 2020 to Creative Paths (collectively, the "Policies").  ECF

No. 1 at ¶ 16.  The Policies each contain form NS0203-Businessowners Specialty Property

Coverage Form (the "Specialty Property Form").  *Id.* at ¶¶ 3, 16.  As indicated at the outset of

this memorandum, the Specialty Property Form provides coverage for "direct physical loss of or

damage to Covered Property":

---

[5] In deciding a motion to dismiss, a court may consider judicially noticed documents without converting the motion into one for summary judgment.  *Menominee Indian Tribe of Wis. v. Thompson*, 161 F.3d 449, 456 (7th Cir. 1998).  "Judicial notice of historical documents, documents contained in the public record, and reports of administrative bodies is proper."  *Id.*; *see also Bova v. U.S. Bank, N.A.*, 446 F. Supp. 2d 926, 931 (S.D. Ill. 2006) ("The Court may of course judicially notice public records and government documents, including those available from reliable sources on the Internet.").  Accordingly, the Court may properly consider the March 23, 2020 Village of Skokie notice.

A. Coverage

> We will pay for direct physical loss of or damage to Covered Property at the premises described in the declarations caused by or resulting from any Covered Cause of Loss.
>
> …
>
> > 3. Covered Causes of Loss
> >
> > Direct physical loss unless the loss is excluded or limited.

Compl., Ex. A, ECF No. 1-1, 25; Ex. B, ECF No 1-2, 26.

The Special Property Coverage Form provides the following "additional coverages," to which the insured "may extend the insurance provided by this policy": (1) Business Income; (2) Civil Authority; (3) Extra Expense; and (4) Communicable Disease Business Income and Extra Expense. ECF No. 1 at ¶¶ 4-7; ECF No. 1-1 at 27-28, 30-32, 35-36; ECF No 1-2 at 28-29, 31-33, 36-37.

The Specialty Property Coverage Form contains a separate section titled Duties In The Event Of Loss Or Damage, which requires the insured to "see that the following are done in the event of loss… [t]ake all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim." ECF No. 1 at ¶ 8; ECF No. 1-1 at 59; ECF No 1-2 at 60. Plaintiffs refer to this provision as "Sue and Labor" coverage. ECF No. 1 at ¶ 8.

The Specialty Property Form also contains Exclusions to the primary and additional coverages, including a Virus Or Bacteria exclusion and a Consequential Losses exclusion. ECF No. 1-1 at 55-56; ECF No 1-2 at 56-57. The Virus Or Bacteria exclusion precludes coverage for loss or damage caused by or resulting from any virus, including COVID-19. The Consequential Losses exclusion precludes coverage for loss or damage caused by or resulting from loss of use.

<u>**Argument**</u>

**A.     The Standard on a Motion to Dismiss.**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,
accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556
U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).
Though the plaintiff "need not plead 'detailed factual allegations' to survive a motion to dismiss,
mere 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will
not do.'"  *Berger v. Nat'l Collegiate Athletic Ass'n*, 843 F.3d 285, 289-90 (7th Cir. 2016)
(*quoting Twombly*, 550 U.S. at 555).  In evaluating the sufficiency of the complaint, the court
must "construe it in the light most favorable to the nonmoving party, accept well-pleaded facts as
true, and draw all inferences in [the nonmoving party's] favor." *Id.* (*quoting Bell v. City of
Chicago*, 835 F.3d 736, 738 (7th Cir. 2016)).  Where an exhibit contradicts the allegations in the
complaint, "the exhibit ordinarily controls, even when considering a motion to dismiss." *Bogie
v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013).

**B.     The Interpretation of Insurance Policies under Michigan and Illinois Law.[6]**

An insurance policy is a contract, and the rules applicable to contract interpretation
govern the interpretation of an insurance policy.  *Founders Ins. Co. v. Munoz*, 237 Ill. 2d 424,
433, 930 N.E.2d 999 (2010); *McKusick v. Travelers Indem. Co.*, 246 Mich. App. 329, 332, 632
N.W.2d 525 (2001).  The court must determine and give effect to the parties' intention, as

---

[6] Federal courts sitting in diversity apply the law of the states in which they sit, including the state's
choice-of-law rules.  *See BB Syndication Servs., Inc. v. First Am. Title Ins. Co.*, 780 F.3d 825, 829 (7th
Cir. 2015).  To decide which jurisdiction's law applies in a contractual dispute, Wisconsin courts look to
the jurisdiction with which the contract has its most significant relationship." *State Farm Mut. Auto. Ins.
Co. v. Gillette*, 2002 WI 31, ¶ 26, 641 N.W.2d 662.  Here, the insured risks are located in Michigan and
Illinois.  Accordingly, West Bend applies the law of those states.  Wisconsin law is in accord with
Michigan and Illinois law *vis-à-vis* the "direct physical loss of or damage to property" requirement
discussed below.

9

expressed by the policy language. *Founders Ins. Co.*, 237 Ill. 2d at 433; *McKusick*, 246 Mich. App. at 332. "An insurance policy must be enforced in accordance with its terms. We will not hold an insurance company liable for a risk it did not assume." *Frankenmuth Mut. Ins. Co. v. Masters*, 460 Mich. 105, 111, 595 N.W.2d 832, 837 (1999) (internal citations omitted).

When construing an insurance policy, the court must consider the policy as a whole. *Founders Ins. Co.*, 237 Ill. 2d at 433; *McKusick*, 246 Mich. App. at 332. Where terms in an insurance policy are undefined, the Court interprets those terms in accordance with their commonly used, ordinary meaning. *Doctors Direct Ins., Inc. v. Bochenek*, 2015 IL App (1st) 142919, ¶ 27, 38 N.E.3d 116; *Frankenmuth Mut. Ins. Co.*, 460 Mich. at 112.

Ultimately, courts engage in a two-step analysis when determining coverage under an insurance policy: (1) whether the general insuring agreements cover the loss and, if so, (2) whether an exclusion negates coverage. *See Addison Ins. Co. v. Fay*, 232 Ill. 2d 446, 453, 905 N.E.2d 747 (2009); *Auto-Owners Ins. Co. v. Harrington*, 455 Mich. 377, 382, 565 N.W.2d 839 (1997). The burden is on the insured to prove its claim falls within the coverage of the insurance policy. *Addison Ins. Co.*, 232 Ill. 2d at 453; *Hunt v. Drielick*, 496 Mich. 366, 373, 852 N.W.2d 562 (2014). Once the insured has established coverage, the burden shifts to the insurer to prove that an exclusion applies. *Addison Ins. Co.*, 232 Ill. 2d at 453-54; *Hunt*, 496 Mich. at 373; *see also* 17A Steven Plitt et al., Couch on Insurance § 254:13 (3d ed. 2014).

**C.    There is no Business Income or Extra Expense coverage because Plaintiffs have not sufficiently alleged "direct physical loss of or damage to property".**

1.    The Business Income and Extra Expense Coverages.

Plaintiffs allege "[t]he presence of COVID-19 caused direct physical loss of or damage to the covered property … by denying use of and damaging the covered property, and by causing a necessary suspension of operations during a period of restoration." *See* ECF No. 1 at ¶¶ 35, 38.

10

Plaintiffs have not plausibly alleged facts sufficient to establish the Business Income and Extra Expense coverages.

The Specialty Property Coverage Form provides:

> 5. Additional Coverages and Coverage Extensions
> …
> > b. Business Income
> >
> > > (1) Business Income
> > >
> > > > (a) We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss….
> > > >
> > > > (b) We will only pay for loss of Business Income you sustain during the "period of restoration" and that occurs within 12 consecutive months after the date of direct physical loss or damage.
> >
> > …
> >
> > n. Extra Expense
> >
> > > (1) We will pay necessary Extra Expense you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss….
> > >
> > > (2) Extra Expense means expense incurred:
> > >
> > > > (a) To avoid or minimize the suspension of business and to continue "operations":
> > > >
> > > > > i. At the described premises; or
> > > > >
> > > > > ii. At replacement premises or at temporary locations, including relocation expenses, and

> costs to equip and operate the replacement or temporary locations.
>
> (b) To minimize the suspension of business if you cannot continue "operations";
>
> (c) To:
>
>> i. Repair or replace any property; or
>>
>> ii. Research, replace or restore the lost information on damaged "valuable papers and records":
>>
>> to the extent it reduces the amount of loss that otherwise would have been payable under this Additional Coverage or Additional Coverage b. Business Income

ECF No. 1-1 at 27-28, 35-36; ECF No. 1-2 at 28-29, 36-37.

Accordingly, the Business Income coverage requires: (a) a necessary suspension of "operations" (b) during a "period of restoration" (c) caused by *direct physical loss of or damage* to property at described premises (d) caused by or resulting from a Covered Cause of Loss (e) that results in actual loss of Business Income (f) during the policy period. ECF No. 1-1 at 28; ECF No. 1-2 at 29.

Similarly, the Extra Expense coverage requires: (a) necessary Extra Expense incurred (2) during a "period of restoration" (b) that would not have been incurred if there had been no *direct physical loss or damage* to property at the described premises (c) caused by or resulting from a Covered Cause of Loss. ECF No. 1-1 at 35; ECF No. 1-2 at 36.

2.      The requirement of "direct physical loss of or damage to property".

The Policies define Covered Causes of Loss as "[d]irect physical loss unless the loss is excluded or limited." ECF No. 1-1 at 26; ECF No. 1-2 at 27. The Policies do not define "direct physical loss of or damage." Where a policy of insurance does not define a term, Michigan and

12

Illinois courts accord the term its commonly understood meaning by referring to dictionary definitions. *Twichel v. MIC Gen. Ins. Corp.*, 469 Mich. 524, 534, 676 N.W.2d 616, 622 (2004); *Founders Ins. Co.*, 237 Ill. 2d at 436. The word "direct" means: "stemming immediately from a source" and "having no compromising or impairing element." *Direct,* MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/direct (accessed July 1, 2020). The word "physical" means: "having material existence : perceptible especially through the senses and subject to the laws of nature." *Physical*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/physical (accessed July 1, 2020); *see also Physical*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("Of, relating to, or involving material things; pertaining to real, tangible objects.").

Given these definitions, "[t]he requirement that the loss be "physical[]" … is widely held to exclude alleged losses that are intangible or incorporeal and, thereby, to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property." Steven Plitt et al, 10A Couch on Ins. § 148:46.

The Sixth Circuit Court of Appeals, applying Michigan law, has held the "direct physical loss or damage" condition was not satisfied where an insured did not suffer any tangible damage to physical property. *Universal Image Prods., Inc. v. Fed. Ins. Co.*, 475 F. App'x 569, 573 (6th Cir. 2012). There, the insured argued it suffered "direct physical loss" because of mold, odor, and bacterial contamination that rendered its premises "uninhabitable" or substantially "unusable" and forced it to evacuate the premises. *Id.* at 572. The insured sought coverage for cleaning and moving expenses, lost (undamaged) improvements, and lost business income. *Id.* at 573. The court of appeals held "[t]hese are not tangible, physical losses, but economic losses,"

explaining the insured "did not experience any form of 'tangible damage' to its insured property… [N]ot a single piece of Universal's physical property was lost or damaged as a result of mold or bacterial contamination." *Id.* Accordingly, no "direct physical loss or damage" to property occurred. *Id.*; *see also Universal Image Prods., Inc. v. Chubb Corp.*, 703 F. Supp. 2d 705, 710 (E.D. Mich. 2010), *aff'd sub nom. Universal Image Prods.*, 475 F. App'x 569 ("[E]ven physical damage that occurs at the molecular or microscopic level must be 'distinct and demonstrable.'") (*quoting Columbiaknit, Inc. v. Affiliated FM Ins. Co.*, No. CIV. 98-434-HU, 1999 WL 619100, at *7 (D. Or. Aug. 4, 1999)); *see also Asian Food Serv., Inc. v. Travelers Cas. Ins. Co. of Am.*, No. 18-13454, 2020 WL 2733831, at *5 (E.D. Mich. May 26, 2020) ("direct physical loss or damage" language "encompasses tangible, physical losses, not economic losses") (*citing Universal Image Prods.*, 475 F. App'x 569, 573 (6th Cir. 2012)).[7]

Illinois is in accord. In *Travelers Ins. Co. v. Eljer Mfg., Inc.*, the Illinois Supreme Court, interpreting a similar phrase in a commercial general liability policy, held that "under its plain and ordinary meaning, the term 'physical injury' unambiguously connotes damage to tangible property causing an alteration in appearance, shape, color or in other material dimension." 197 Ill. 2d 278, 312, 757 N.E.2d 481, 502 (2001). The court relied on the dictionary definition of "physical" to conclude that "to the average, ordinary person, tangible property suffers a 'physical' injury when the property is altered in appearance, shape, color or in other material dimension. Conversely, to the average mind, tangible property does not experience 'physical' injury if that property suffers intangible damage, such as diminution in value…." *Id.* at 301-02.

---

[7] On July 1, 2020, the Circuit Court for the County of Ingham, Michigan, granted summary disposition in favor of the insurer in a case involving the same issues before this Court. *See Gavrilides Management Company et al. vs. Michigan Insurance Company*, Case No. 20-258-CB-C30 (Ingham County), Dkt. 18 (07/01/2020).

Wisconsin is also in accord.  In *3303-05 Marina Rd., LLC v. West Bend Mut. Ins. Co.* (unpublished), the court interpreted "direct physical loss of" to unambiguously require material or tangible destruction of property:

> We disagree with Michalski's assertion that the phrase "loss of" is ambiguous. The Policies clearly state that they cover "direct physical loss of" the Property. The common and ordinary meaning of the word "physical" is "of or related to natural or material things as opposed to things mental, moral, spiritual, or imaginary," *see* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1706 (1993) … while the common and ordinary meaning of the word "loss" is " 'the state or fact of being destroyed or placed beyond recovery,'" *see RTE Corp. v. Maryland Casualty Co.*, 74 Wis.2d 614, 624, 247 N.W.2d 171 (1976) (citation omitted)…. That is to say, by including the word "physical" before "loss of ... Covered Property" the parties intended that the Policies cover material or tangible destruction of the Property, not financial detriment resulting from a hasty investment.  In suggesting that the Policies define "loss of" as "financial detriment," Michalski ignores the word "physical" in its entirety.

2009AP1629, 2010 WL 3489391 (Wis. Ct. App. Sep. 8, 2010) (certain internal citations omitted).  And, in *General Cas. Co. of Wis. v. Rainbow Insulators, Inc.* (unpublished), the court interpreted similar language to unambiguously require some type of material damage:

> The phrase "physical injury to tangible property" in an insurance policy is clear in its meaning and not ambiguous. When "injury" is "qualified by the word physical, its meaning is limited to physical damage." Accordingly, "the phrase 'physical' injury ordinarily refers to some sort of physical damage" to property, id., such as "an alteration in appearance, shape, color, or in other material dimension."

2010AP347, 2011 WL 1162088 (Wis. Ct. App. March 31, 2011) (internal citations omitted).

Consistent with the above holdings, courts in other jurisdictions have held that intangible, nonphysical losses, such as economic loss, are not covered.  *See* Steven Plitt et al, 10A Couch on Ins. § 148:46; *see also, e.g.*, *Great N. Ins. Co. v. Benjamin Franklin Fed. Sav. & Loan Ass'n*, 793 F. Supp. 259, 263 (D. Or. 1990), *aff'd*, 953 F.2d 1387 (9th Cir. 1992) (presence of asbestos in property held not to be direct physical loss) ("There is no evidence here of physical loss, direct or otherwise.  The building has remained physically intact and undamaged.  The only loss is

15

economic.… The inclusion of the terms "direct" and "physical" could only have been intended to exclude indirect, nonphysical losses."); *Mastellone v. Lightning Rod Mut. Ins. Co.*, 2008-Ohio-311, ¶ 68, 884 N.E.2d 1130, 1144 (no physical damage where presence of mold "did not alter or otherwise affect the structural integrity of the siding").

> 3. Plaintiffs' allegations of "direct physical loss of or damage to property" are insufficient to establish Business Income or Extra Expense coverage.

The Complaint sets forth three allegations in support of Plaintiffs' contention that the "presence of COVID-19" satisfies the requirement of "direct physical loss of or damage to property". Plaintiffs allege: "The presence of COVID-19 caused direct physical loss of or damage to the covered property under Plaintiffs' policies … [1] by denying use of and [2] damaging the covered property, and [3] by causing a necessary suspension of operations during a period of restoration." ECF No.1 at ¶ 35, 38. These allegations are insufficient to establish coverage for the following reasons.

> a. *Loss of use is not "direct physical loss of or damage to property".*

Plaintiffs' first allegation—loss of use of covered property—is not "direct physical loss of or damage to property" at all. As explained above, "[t]he requirement that the loss be "physical[]" … is widely held … to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property." Steven Plitt et al, 10A Couch on Ins. § 148:46. Here, Plaintiffs do not allege any distinct, demonstrable, or physical alteration, but merely a loss of use and resulting economic impact.

West Bend anticipates Plaintiffs will argue that loss of habitability or usability constitutes "direct physical loss of or damage". In *Universal Image Prods.*, the Sixth Circuit considered whether the result would change if Michigan were to adopt a more expansive definition of the

"direct physical loss or damage" condition such that "physical loss" occurs when the insured's property becomes "uninhabitable" or substantially "unusable." 703 F. Supp. 2d at 574. The court of appeals held such an expansive definition would not change the outcome because the insured failed to demonstrate uninhabitability or unusableness. Here, similarly, Plaintiffs' allegations are insufficient to demonstrate the uninhabitability or the unusableness of their property. To the contrary, as Plaintiffs' own allegations demonstrate, both Michigan and Illinois permitted childcare centers to operate during the effective periods of the executive orders.

Plaintiffs' third allegation—that "[t]he presence of COVID-19 caused direct physical loss of or damage to the covered property under Plaintiffs' policies … by causing a necessary suspension of operations during a period of restoration," ECF No.1 at ¶ 35, is merely another way of saying that loss of use, by itself, constitutes "direct physical loss of or damage to property". For there to be Business Income coverage, however, Plaintiffs must plausibly allege facts showing that "direct physical loss of or damage to property" caused a necessary suspension of operations during a "period of restoration". In other words, Plaintiffs' allegation of a "necessary suspension of operations" does not establish that "direct physical loss of or damage to property" caused that suspension.

Finally, even if the "direct physical loss of or damage to property" requirement were construed expansively to include "loss of use"—and it should not be—the Specialty Property Form includes a Consequential Losses exclusion which expressly precludes coverage for loss or damage caused by loss of use. The Consequential Losses exclusion is discussed in greater detail below.

        b.      *Plaintiffs' allegations of damage to covered property are conclusory.*

Plaintiffs' second allegation—that the "presence" of COVID-19 damaged covered property—is a mere recitation of the "direct physical loss of or damage to property" requirement. The Complaint contains no allegations of damage to property beyond Plaintiffs' conclusory statement that "[t]he presence of COVID-19 caused direct physical loss of or damage to the covered property under Plaintiffs' policies … by … damaging the covered property[.]"[8] ECF No.1 at ¶ 35. Plaintiffs do not allege any structural, material, tangible, or lasting (i.e. physical) changes or alteration to their property. As explained above, the "direct physical loss of or damage to the covered property" condition requires some material, tangible loss of or damage to property. Under the circumstances as alleged, this case does not involve any "direct physical loss of or damage to the covered property," nor any property, anywhere, and accordingly, there is no Business Income or Extra Expense coverage.

        4.      The requirement of a "period of restoration" is incongruous with <u>Plaintiffs' allegation of "direct physical loss or damage to property".</u>

The Business Income and Extra Expense coverages each require that the insured's premises undergo a "period of restoration". ECF No. 1-1 at 28; ECF No. 1-2 at 29. The "period of restoration" "begins with the date of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the described premises." ECF No. 1-1 at 64; ECF No. 1-2 at 65. The "period of restoration" ends on the earlier of (1) "[t]he date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar

---

[8] The Complaint is ambiguous as to whether Plaintiffs mean the "presence" of COVID-19 at the insured premises, or the generalized "presence" of COVID-19 across the United States. To the extent Plaintiffs intend the latter, that serves only as further indication that Plaintiffs fail to sufficiently allege any direct physical loss of or damage *to the covered property*. And, to the extent Plaintiffs intend the former formulation, they fail to allege that such "presence" caused any tangible, material loss of or damage to their property.

quality;" or (2) "[t]he date when business is resumed at a new permanent location." ECF No. 1-1 at 64; ECF No. 1-2 at 65.

The definition of "period of restoration" brings into relief that Plaintiffs have not plausibly alleged any "direct physical loss of or damage to property". Plaintiffs do not allege their property will need to be repaired, rebuilt or replaced as a result of the "presence" of COVID-19. Nor do Plaintiffs allege their businesses must be resumed at a new permanent location as a result of the "presence" of COVID-19. The absence of such allegations reinforces the conclusion that no "direct physical loss of or damage to property" occurred here.

**D.    There is no Civil Authority coverage because Plaintiffs have not alleged damage to other property, and there is no prohibition of access in response to dangerous physical conditions arising out of such damage.**

Plaintiffs contend the "presence" of COVID-19 resulted in the issuance of Closure Orders which prohibited access to Plaintiffs' property. Plaintiffs have not plausibly alleged facts sufficient to establish Civil Authority coverage.

The Specialty Property Coverage Form provides:

> e. Civil Authority
>
>> When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises provided that both of the following apply:
>>
>>> (1) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and
>>>
>>> (2) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of

19

the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

Civil Authority Coverage … will begin immediately after the time of the first action of civil authority that prohibits access to the described premises and will apply for a period of up to four consecutive weeks from the date on which such coverage began.

ECF No. 1-1 at 30-31; ECF No. 1-2 at 31-32.

Accordingly, the Civil Authority coverage requires: (1) damage to property other than property at the described premises (2) caused by a Covered Cause of Loss (3) that results in actual loss of Business Income and necessary Extra Expense incurred (4) caused by an action of civil authority prohibiting access to the described premises, provided that (5) access to the area immediately surrounding the damaged property is prohibited as a result of the damage, and the described premises are within one mile of the damaged property, and (6) the action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage. *See* ECF No. 1-1 at 30-31; ECF No. 1-2 at 31-32.

Here, Plaintiffs fail to allege any structural, material, tangible, or lasting (i.e. physical) damage to other property located in the area of the insured premises. Plaintiffs have not plausibly alleged damage to any property located anywhere. Plaintiffs also fail to plead any facts that would establish the other requirements for Civil Authority coverage. Plaintiffs' own allegations that the Michigan and Illinois Executive Orders permitted childcare centers to serve children of critical infrastructure/essential workers demonstrate that no prohibition against access to the insured premises occurred. Instead, Plaintiffs elected not to continue their operations. Further, Plaintiffs do not allege that the actions of civil authority were taken in response to

dangerous physical conditions resulting from damage to other property located in the area of the premises. Again, the Complaint contains no allegations whatsoever regarding other property located in the area of Plaintiffs' premises.

Few Illinois, Michigan, or Wisconsin courts have considered and interpreted Civil Authority coverage. In *Sloan v. Phoenix of Hartford Ins. Co.*, the court considered a Civil Authority coverage dispute arising out of widespread riots in Detroit that were accompanied by looting, burning, and other damage to property. 46 Mich. App. 46, 47, 207 N.W.2d 434 (1973). As a result, the Michigan Governor imposed a curfew and plaintiffs' theaters were completely closed and later opened on a restricted basis. *Id.* at 47–48. Although the court found coverage available under the policy, the court did so because one of the perils insured against was riot. *Id.* at 51.

The situation here is very different. Unlike the insurer in *Sloan*, West Bend does not contend that physical damage to the insured premises is a condition precedent to Civil Authority coverage; instead, the Policies unambiguously require physical damage to *other* property to establish Civil Authority coverage.

Nevertheless, *Sloan* illustrates the requirement that physical damage to some property must occur somewhere, and such damage must be caused by "peril insured against"—in other words, there must be damage to property caused by a Covered Cause of Loss. In *Sloan*, the physical damage to other property was manifest—rioters looted and burned property—and riot was a peril insured against under the policy at issue. By contrast, in the present case, Plaintiff's Complaint does not contain any allegations remotely resembling such circumstances. Plaintiffs have not alleged any damage to other property, let alone damage caused by a Covered Cause of Loss. Further, in *Sloan*, the Governor's curfew order was issued "as a result" of the rioting. *Id.*

at 47. Here, Plaintiffs have not plausibly alleged that the Michigan and Illinois Executive Orders were issued as a result of damage to other property.[9]

Cases from other jurisdictions demonstrate that Civil Authority coverage requires a causal nexus between the civil authority action and prior damage to other property. For example, in *Dickie Brennan & Co. v. Lexington Ins. Co.*, the Fifth Circuit Court of Appeals explained: "The general rule is that '[c]ivil authority coverage is intended to apply to situations where access to an insured's property is prevented or prohibited by an order of civil authority issued *as a direct result of* physical damage to other premises in the proximity of the insured's property." 636 F.3d 683, 686-87 (5th Cir. 2011) (emphasis added) (*quoting* Clark Schirle, *Time Element Coverages in Business Interruption Insurance*, 37 THE BRIEF 32, 38 (2007)). The court considered whether plaintiffs had established a link between the issuance of an order requiring mandatory evacuation of New Orleans as Hurricane Gustav approached and any prior direct physical loss of or damage to property other than at the described premises. *Id.* at 685. The court answered, "No," finding that "[n]othing in the record … shows that the issuance of the order was 'due to' physical damage to property." *Id.* at 686.

Similarly, here, Plaintiffs have not alleged that the Illinois or Michigan Executive Orders (or the Village Closure Order) were issued as a result of prior damage to property other than at the described premises (and that occurred within one mile of the described premises, because the Civil Authority coverage at issue here includes a proximity element). Plaintiffs' allegations fail

---

[9] In *Adelman Laundry & Cleaners, Inc. v. Factory Ins. Ass'n*, the Wisconsin Supreme Court held there was no Civil Authority coverage because there was no physical damage to the plaintiffs' premises or property. 59 Wis. 2d 145, 146, 207 N.W.2d 646 (1973). Again, West Bend does not contend that Civil Authority coverage requires damage to the insured property. But, as explained above, Plaintiffs have not plausibly alleged damage to any property anywhere.

to establish this required nexus between damage to other property and the issuance of the executive orders.

**E.     There is no Communicable Disease Business Income and Extra Expense coverage because Plaintiffs fail to allege the shutdown or suspension of their operations was due to an outbreak at the insured premises.**

Plaintiffs claim West Bend breached its obligations under the Policies by denying Plaintiffs' claims for benefits under the Communicable Disease Business Income and Extra Expense coverage.  Plaintiffs' allegations do not satisfy the requirements to establish Communicable Disease Business Income and Extra Expense coverage.

The Specialty Property Coverage Form provides:

g. Communicable Disease Business Income and Extra Expense Coverage

> You may extend this insurance to apply to the actual loss of Business Income or Extra Expense that you sustain as the result of your "operations" being temporarily shut down or suspended as ordered by a local, state, or federal board of health or similar governmental board that has jurisdiction over your "operations". The shutdown or suspension must be due to an outbreak of a "communicable disease" or a "waterborne pathogen" at the insured premises as described in the Declarations.

> We will pay any loss of Business Income or any necessary Extra Expense costs (other than the expense to repair or replace property) you incur arising from the shutdown or suspension of your "operations"…

…

> The coverage for Business Income and Extra Expense will begin 24 hours after the jurisdictional board shuts down or suspends your "operations" and will end within 30 days after the jurisdictional body certifies that the described premises are habitable and that you may fully or partially resume your "operations."

ECF No. 1-1 at 32; ECF No. 1-2 at 33.

23

Accordingly, the Communicable Disease Business Income and Extra Expense coverage requires: (1) actual loss of Business Income or incurred Extra Expense (2) as a result of operations being temporarily shut down or suspended (3) as ordered by a governmental authority (4) due to an outbreak of communicable disease (5) at the insured premises. ECF No. 1-1 at 32; ECF No. 1-2 at 33. The use of the words "due to" indicates a causal nexus between the shutdown or suspension and the outbreak at the insured premises is required to establish coverage. "Due to" means "as a result of : because of." *Due to*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/due%20to (accessed July 1, 2020).

Though the Policies do not define the word outbreak, here, the Court need not decide what constitutes an outbreak because, regardless of the definition adopted, Plaintiffs have not plausibly alleged any facts demonstrating an outbreak of COVID-19 occurred at their premises, nor have they plausibly alleged any facts demonstrating that a governmental authority shut down or suspended their operations *due to* an outbreak of COVID-19 at their premises.

With regard to Paradigm Care, Plaintiffs do not allege that any of its active enrollees or staff have tested positive for COVID-19. Plaintiffs do not allege that COVID-19 is or was present at Paradigm Care's premises. Plaintiffs do not allege that transmission of COVID-19 occurred at Paradigm Care's premises. And, without such allegations, it necessarily follows that Plaintiffs cannot establish the causal nexus that Paradigm Care's alleged shutdown or suspension was due to an outbreak at its premises.

With regard to Creative Paths, Plaintiffs allege that on or about March 23, 2020—three days after Creative Paths was allegedly required to close—Creative Paths learned that one of its active enrollees and the child's family had tested positive for COVID-19. ECF No.1 at ¶ 33. Accordingly, Plaintiffs cannot establish the required causal nexus between Creative Path's

alleged shutdown or suspension and an outbreak at its premises. Further, Plaintiffs do not allege when the enrollee with the positive diagnosis last attended Creative Paths' facilities. Plaintiffs do not allege that the enrollee and his or her family were exposed to COVID-19 on Creative Paths' premises. Plaintiffs do not allege that any of Creative Paths' staff have tested positive for COVID-19. In short, Plaintiffs do not allege any facts plausibly linking the enrollee's confirmed diagnosis to the insured premises. Therefore, under the circumstances, Plaintiffs cannot establish that an outbreak occurred at the insured premises.

What is more, as noted above, Plaintiffs allege Creative Paths was required to close three days *prior* to that confirmed diagnosis. *Id.* The Communicable Disease Business Income and Extra Expense coverage requires that the shutdown or suspension be "due to" an outbreak at the insured premises. Because the alleged shutdown or suspension occurred prior to the confirmed diagnosis, Plaintiffs necessarily cannot establish the required causal nexus between the confirmed diagnosis and Creative Paths' alleged shutdown or suspension.[10]

### F. The Duties In The Event Of Loss Or Damage section does not grant coverage and is irrelevant to Plaintiffs' claims.

Plaintiffs allege their losses are covered under the Duties In The Event Of Loss Or Damage section. Plaintiffs contend this section provides so-called "Sue and Labor" coverage. But, this section does not provide an independent grant of coverage at all.

---

[10] West Bend does not concede that a single confirmed diagnosis of COVID-19 constitutes an outbreak under the Communicable Disease Business Income and Extra Expense coverage. Indeed, the ordinary meaning of outbreak suggests that a single confirmed diagnosis is insufficient to constitute an outbreak. In any event, the Court need not decide the question of what constitutes an outbreak because the circumstances as alleged demonstrate that in the case of Creative Paths, the alleged shutdown or suspension preceded the confirmed diagnosis, and in the case of Paradigm Care, there is no confirmed diagnosis.

The Specialty Property Coverage Form provides:

3. Duties In The Event Of Loss Or Damage

> a. You must see that the following are done in the event of loss or damage to Covered Property:
>
> …
>
>> (4) Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

ECF No. 1-1 at 59; ECF No. 1-2 at 60. This language does not grant coverage. Instead, it creates a duty incumbent on the insured in the event of loss or damage to Covered Property. As explained above, Plaintiffs have not alleged any facts demonstrating such loss or damage occurred. Where, as here, Plaintiffs do not plausibly allege any "direct physical loss of or damage to property," there are no reasonable steps necessary for the insured to take because no damage has occurred. Indeed, Plaintiffs do not allege any steps they have taken to supposedly protect the Covered Property from further damage. None has occurred. The Duties In The Event Of Loss Or Damage section is irrelevant under Plaintiffs' alleged circumstances.

**G.    Even assuming an initial grant of coverage under the Business Income, Civil Authority, and Extra Expense coverages, the Virus Or Bacteria and Consequential Losses exclusions negate coverage.**

Although the Complaint does not acknowledge any of the Policies' exclusions, the Court may consider the Policies in full as they are exhibits to the Complaint and form an integral part of the pleadings. Fed. R. Civ. P. 10(c); *see Wright v. Associated Ins. Companies Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994).

Here, even if Plaintiffs could sufficiently allege any set of facts demonstrating their losses are covered under the Policies, the Virus Or Bacteria and Consequential Losses exclusions

negate any possibility of Business Income, Civil Authority, and Extra Expense coverage under the circumstances.

      1.        The Virus Or Bacteria Exclusion negates any possibility of coverage under the Business Income, Civil Authority, and Extra Expense coverages and <u>the Duties In The Event Of Loss Or Damage section.</u>

Plaintiffs acknowledge that insurers have issued property policies containing virus-related loss exclusions since at least 2006, and placed those exclusions "in some policies, but not others." ECF No.1 at ¶ 21. Plaintiffs neglect to mention that their Policies fall in the former category. ECF No. 1-1 at 56; ECF No. 1-2 at 57.

The Specialty Property Coverage Form provides:

B. Exclusions

…

2. We will not pay for loss or damage caused by or resulting from any of the following:
…

    l. Virus Or Bacteria

        (1) Any virus, bacterium or other microorganism that incudes [sic] or is capable of inducing physical distress, illness or disease.

ECF No. 1-1 at 53-54, 56; ECF No. 1-2 at 54-55, 57. Thus, Plaintiffs' Policies exclude loss or damage caused by or resulting from any virus, including COVID-19, as a Covered Cause of Loss. *See* ECF No. 1-1 at 26 (Covered Cause of Loss means "[d]irect physical loss unless the loss is excluded or limited."); ECF No. 1-2 at 27 (same).

Plaintiffs' allegations place their alleged losses squarely within the Policy's Virus Or Bacteria exclusion. The exclusion's application to viruses is unambiguous, and Plaintiffs' allegations make clear that COVID-19 was the cause of their losses: "The presence of COVID-19 caused direct physical loss of or damage to the covered property under Plaintiffs' policies ...."

27

ECF No.1 at ¶ 35. "Plaintiffs were forced to suspend or reduce operations at their childcare centers *due to* COVID-19 and the *resultant* closure orders." *Id.* at ¶ 9 (emphasis added). COVID-19 is a virus.[11] COVID-19 is therefore excluded as a Covered Cause of Loss, and Plaintiffs' losses resulting from COVID-19 are excluded from coverage under the Business Income, Civil Authority, and Extra Expense coverages, as well as the Duties In The Event Of Loss Or Damage section.

        2.     <u>The Consequential Losses exclusion negates any possibility of coverage for plaintiffs' alleged loss of use of their covered property.</u>

Plaintiffs allege that loss of use of their property constitutes "direct physical loss of or damage to property." ECF No.1 at ¶ 35. Even if the definition of "direct physical loss of or damage to property" were expansive enough to encompass loss of use—and it is not that expansive, for the reasons described above—Plaintiffs' Policies expressly and unambiguously exclude loss of use as a Covered Cause of Loss.

The Specialty Property Coverage Form provides:

B. Exclusions

    2. We will not pay for loss or damage caused by or resulting from any of the following:
…

        b. Consequential Losses

        Delay, loss of use or loss of market.
        …

    4. Business Income and Extra Expense Exclusions

        a. We will not pay for:
        …
            (1) Any other consequential loss.

---

[11] *See supra* note 1.

ECF No. 1-1 at 53-55; ECF No. 1-2 at 54-56.  Thus, Plaintiffs' Policies exclude loss or damage caused by or resulting from any loss of use as a Covered Cause of Loss.  *See* ECF No. 1-1 at 26 (Covered Cause of Loss means "[d]irect physical loss unless the loss is excluded or limited."); ECF No. 1-2 at 27 (same).

Plaintiffs' allegation that "[t]he presence of COVID-19 caused direct physical loss of or damage to the covered property under Plaintiffs' policies ... by denying use of ... the covered property," ECF No.1 at ¶ 35, falls directly within the Consequential Losses exclusion.  Plaintiffs' losses resulting from any alleged denial of use are therefore excluded from coverage under the Business Income, Civil Authority, Extra Expense, and Communicable Disease Business Income and Extra Expense coverages, as well as the Duties In The Event Of Loss Or Damage section.

## CONCLUSION

For the foregoing reasons, Plaintiffs have not plausibly alleged facts sufficient to establish coverage for their claimed Business Income loss and Extra Expense incurred.  Under the circumstances, Plaintiffs cannot possibly establish their claims are covered.  West Bend respectfully requests the Court dismiss Plaintiffs' Complaint for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. Proc. 12(b)(6).

Dated this 2nd day of July, 2020.

Respectfully submitted,

s/ *Jason R. Fathallah*

Jason R. Fathallah
HUSCH BLACKWELL LLP
555 East Wells Street, Suite 1900
Milwaukee, Wisconsin 53202-3819
Telephone:  414.273.2100
Fax:  414.223.5000
Email: jason.fathallah@huschblackwell.com

Scott J. Helfand
HUSCH BLACKWELL LLP
120 South Riverside Plaza, Suite 2200
Chicago, IL 60606
Phone: (312) 655-1500
Facsimile: (312) 655-1501
Email: scott.helfand@huschblackwell.com

*Attorneys for Defendant, West Bend Mutual Insurance Company*