# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

|  |  |
|---|---|
| PARADIGM CARE & ENRICHMENT CENTER, LLC, PARADIGM CARE & ENRICHMENT CENTER 2, LLC, CREATIVE PATHS LEARNING CENTER, INC., and CREATIVE PATHS INFANT CENTER, INC., | Case No. 20-CV-720-JPS |
| Plaintiffs, | |
| v. | |
| WEST BEND MUTUAL INSURANCE COMPANY, | **ORDER** |
| Defendant. | |

## 1.    BACKGROUND

On May 12, 2020, Paradigm Care & Enrichment Center, LLC, Paradigm Care & Enrichment Center 2, LLC, Creative Paths Learning Center, LLC, and Creative Paths Infant Center, LLC (collectively, "Plaintiffs")[1] brought this action against West Bend Mutual Insurance Company ("Defendant"). (Docket #1). Plaintiffs filed this complaint both individually and on behalf of multiple proposed nation-wide classes. (*See id.* at 13–14). In July, 2020, Defendant filed both a motion to dismiss, (Docket #13), and a motion to strike Plaintiffs' class allegations, (Docket #15).

---

[1] As in Plaintiffs' amended complaint, the Court will refer to Paradigm Care & Enrichment Center, LLC and Paradigm Care & Enrichment Center 2, LLC collectively as "Paradigm Care." Similarly, the Court will refer to Creative Paths Learning Center, Inc. and Creative Paths Infant Center, Inc. collectively as "Creative Paths."

Thereafter, the parties filed a joint stipulation, which provided Plaintiffs time to file an amended complaint. (Docket #17). After the Court adopted that stipulation,[2] Plaintiffs filed their amended complaint. (Docket #18). Now before the Court are Defendant's (1) motion to dismiss Plaintiffs' amended complaint, (Docket #21), and (2) motion to strike Plaintiffs' class allegations therein, (Docket #23). For the reasons discussed in the balance of this Order, the Court will grant Defendant's motion to dismiss and deny as moot Defendant's motion to strike class allegations.

## 2. LEGAL STANDARD

Defendant filed a motion to dismiss Plaintiffs' amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). When evaluating motions to dismiss, the Court is required to "accept as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff." *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016) (citation omitted). Dismissal is only appropriate "if it appears beyond doubt that the plaintiff could prove no set of facts in support of his claim that would entitle him to the relief requested." *Enger v. Chi. Carriage Cab Corp.*, 812 F.3d 565, 568 (7th Cir. 2016) (citation omitted). However, a plaintiff's allegations must "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level[.]" *Kubiak*, 810 F.3d at 480. (quoting *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)). A complaint that offers "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*,

---

[2]Pursuant to the parties' joint stipulation, (Docket #17), the Court will deny as moot Defendant's (1) motion to dismiss Plaintiffs' initial complaint, (Docket #13), and (2) motion to strike Plaintiffs' class allegations in that complaint, (Docket #15).

Case 2:20-cv-00720-JPS   Filed 03/26/21   Page 2 of 21   Document 44

556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The Court must identify allegations "that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft*, 556 U.S. at 679.

### 3.     RELEVANT FACTS[3]

#### 3.1     The Parties

Paradigm Care owns and operates childcare and enrichment centers in both Waterford and Canton, Michigan. Similarly, Creative Paths owns and operates both an early childhood center and an infant center in Skokie, Illinois. Defendant is a Wisconsin-based insurance company, organized pursuant to Wisconsin law.

Plaintiffs paid Defendant a premium in exchange for insurance coverage. Pursuant to Paradigm Care's policy, Defendant provided coverage to Paradigm Care from August 23, 2019 through August 23, 2020, insuring Paradigm Care's properties in Waterford and Canton, Michigan. Similarly, Defendant provided coverage to Creative Paths from August 26, 2019 to August 26, 2020, insuring Creative Paths's properties in Skokie, Illinois. Plaintiffs' respective policies included a Form NS 0203 01 18, otherwise known as a "Businessowners Special Property Coverage Form"

---

[3]The relevant facts are from Plaintiffs' amended complaint, (Docket #18). Further, pursuant to Federal Rule of Civil Procedure 10(c), the Court also considers "[a] copy of a written instrument that is an exhibit to a pleading" as "a part of the pleading for all purposes." *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002) ("Because the letter was attached to the complaint, it became a part of [the complaint] for all purposes."). To the extent the Court refers to any documents attached to Plaintiffs' amended complaint, the Court provides a citation thereto.

(hereinafter, the "Form"),[4] which provided additional coverage and also contained policy exclusions.

### 3.2    Michigan and Illinois Closure Orders

"At present, COVID-19 requires no introduction: the novel coronavirus causing this disease has spread around the world, resulting in an unprecedented global pandemic that has disrupted every aspect of public life." *Mays v. Dart*, 974 F.3d 810, 814 (7th Cir. 2020), *petition for cert. filed*, No. 20-990 (U.S. Jan. 26, 2021). In light of the uncontainable spread of COVID-19, many civil authorities issued orders suspending or limiting business operations within their respective jurisdictions. Michigan's governor issued an executive order, effective March 24, 2020 through June 1, 2020, that permitted childcare centers to remain open "only to the extent necessary to serve the children or dependents of critical infrastructure workers." Thus, this order required Paradigm Care to drastically reduce its operations.

Effective March 20, 2020, the Village of Skokie, Illinois, instructed "all Day Care, Child Care and Home Care Facilities and Programs to close and cease operations for all children of all ages," to "break the continuing spread of COVID-19 through social distancing." Further, Illinois's governor issued an executive order, effective March 21, 2020 through May 29, 2020, that closed all "non-essential businesses." In Illinois, a childcare center could stay open only if it obtained a license to provide childcare for the children of essential workers, (i.e., if it became an "emergency childcare center"). Creative Paths closed as a result of both the Illinois and Skokie

---

[4]Plaintiffs provide the Court with both of their respective policies and copies of the Form. Because their Forms are identical, the Court cites to only one of the Forms, (Docket #18-1), herein.

orders. Notably, on or about March 23, 2020, after Creative Paths closed, it learned that one of its active enrollees and the active enrollee's family had tested positive for COVID-19.

Plaintiffs claim that, due to both COVID-19 and the aforementioned closure orders, they have suffered losses, which in turn triggered the following coverages, as detailed in the Form: (1) Business Income Coverage, (2) Extra Expense Coverage, (3) Civil Authority Coverage, (4) Communicable Disease Coverage, and (5) the Duties in the Event of Loss or Damage provision.[5] Plaintiffs submitted insurance claims, which Defendant denied. Plaintiffs subsequently filed this lawsuit, seeking both (1) damages for Defendant's alleged breaches of contract and (2) multiple declaratory judgments. Because the crux of Plaintiffs' claims depends on the Form's language, the Court reproduces the relevant policy language below.

### 3.3     Business Income Coverage

Under the "Business Income" provision, Defendant:

> will pay for the actual loss of Business Income [that a policyholder] sustain[s] due to the necessary suspension of [the policyholder's] "operations" during the "period of restoration." The suspension must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss.

(Docket #18-1 at 28). A "period of restoration" is defined as "the period of time that . . . [b]egins with the date of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the described premises,"

---

[5]Throughout their amended complaint, Plaintiffs refer to this provision as the "Sue and Labor" provision. (*See, e.g.*, Docket #18 at 8).

and "[e]nds on the earlier of . . . [t]he date when the property at the described premises should be repaired, rebuilt, or replaced . . . or . . . [t]he date when business is resumed at a new permanent location." (*Id.* at 64). Lastly, the term "Covered Cause of Loss" means "[d]irect physical loss unless the loss is excluded or limited." (*Id.* at 26).[6]

### 3.4    Extra Expense Coverage

Pursuant to the Extra Expense provision in the Form, Defendant:

> will pay necessary Extra Expense [that a policyholder] incur[s] during the "period of restoration" that [the policyholder] would not have incurred if there had been no direct physical loss or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss.

(*Id.* at 35). The Form defines "Extra Expense" as an "expense incurred . . . [t]o avoid or minimize the suspension of business and to continue 'operations.'" (*Id.* at 35–36).

### 3.5    Civil Authority Coverage

As enumerated in the Form, Defendant also provides "Civil Authority Coverage" to Plaintiffs. Pursuant to this provision:

> [w]hen a Covered Cause of Loss causes damage to property other than property at the described premises, [Defendant] will pay for the actual loss of Business Income [that a policyholder] sustain[s] and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises provided that both of the following apply: (1) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and

---

[6]The foregoing definitions for "period of restoration" and "Covered Cause of Loss" apply to the remaining types of coverage, discussed *infra*, unless such terms are omitted or explicitly excluded.

Case 2:20-cv-00720-JPS    Filed 03/26/21    Page 6 of 21    Document 44

(2) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

(*Id.* at 30).

### 3.6 Communicable Disease Coverage

Plaintiffs also obtained "Communicable Disease Business Income and Extra Expense Coverage" from Defendant. Under this provision, Defendant agreed to pay a policyholder for "actual loss of Business Income or any necessary Extra Expense costs" that a policyholder sustains if the policyholder's "'operations' [were] temporarily shut down or suspended" pursuant to the order of a board of health or similar governmental board. (*Id.* at 32). Notably, the shutdown or suspension "must be due to an outbreak of a 'communicable disease' or a 'waterborne pathogen'" at the policyholder's insured premises. (*Id.*) Defendant will pay for, among other things, a policyholder's costs to (1) clean and disinfect its equipment and insured premises, (2) replace contaminated consumable goods, (3) test the insured premises to confirm the elimination of disease or pathogen, (4) provide medical tests and care to infected persons, (5) advertise in order to restore the policyholder's business reputation, (6) evacuate the insured premises, (7) relocate as necessary to minimize the suspension of business, and (8) minimize suspension of operations. (*Id.*)

### 3.7 Duties in the Event of Loss or Damage

Lastly, Plaintiffs aver that they were denied coverage pursuant to the "Duties in the Event of Loss or Damage" section of the Form (the "Duties Section"). The Duties Section obligates policyholders to "[t]ake all reasonable steps to protect the Covered Property from further damage, and

keep a record of [their] expenses necessary to protect the Covered Property, for consideration in the settlement of the claim." (*Id.* at 59). This section makes clear that Defendant "will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss." (*Id.*)[7]

## 4. ANALYSIS

Whether Plaintiffs have stated a viable claim for relief turns on this Court's interpretation of the Form's language. Because the Court is sitting in diversity in this case, it shall "appl[y] the law of the state in which it sits, including the state's choice-of-law rules." *BB Syndication Servs., Inc. v. First Am. Title Ins. Co.*, 780 F.3d 825, 829 (7th Cir. 2015). Thus, Wisconsin choice-of-law rules apply. When determining "which jurisdiction's law applies to a contractual dispute," Wisconsin courts apply "the law of the jurisdiction with which the contract has its most significant relationship." *State Farm Mut. Auto. Ins. Co. v. Gillette*, 641 N.W.2d 662, 670–71 (Wis. 2002) (citations and alterations omitted). The parties are in agreement that, pursuant to Wisconsin choice-of-law rules, Michigan law governs the interpretation of the Form as to Paradigm Care, whereas Illinois law governs the interpretation of the Form as to Creative Paths.

Both Michigan and Illinois courts apply contract interpretation rules when interpreting the terms of an insurance policy. *Auto-Owners Ins. Co. v.*

---

[7]In its brief, Defendant argues that there are two relevant policy exclusions in the Form, which preclude some of the types of coverage at issue. (Docket #22 at 27–30) However, because the Court finds that Plaintiffs have not alleged coverage under the Business Income, Extra Expense, Civil Authority, and Communicable Disease provisions, and that the Duties Section does not confer coverage, the Court need not reach the question of whether such policy exclusions would foreclose coverage to Plaintiffs.

*Harrington*, 565 N.W.2d 839, 841 (Mich. 1997); *Drs. Direct Ins., Inc. v. Bochenek*, 38 N.E.3d 116, 123 (Ill. App. Ct. 2015). Therefore, Michigan and Illinois courts review the policy's terms to determine the parties' intent and give effect to the same. *Auto-Owners*, 565 N.W.2d at 841; *Hunt v. Drielick*, 852 N.W.2d 562, 565 (Mich. 2014); *Addison Ins. Co. v. Fay*, 905 N.E.2d 747, 755 (Ill. 2009). "Where there is no ambiguity, [courts] will enforce the terms of the contract as written. . . . [and] interpret[] the terms of an insurance contract in accordance with their commonly used meaning." *Frankenmuth Mut. Ins. Co. v. Masters*, 595 N.W.2d 832, 837 (Mich. 1999) (internal quotations and citation omitted). *See also Drs. Direct*, 38 N.E.3d at 123 (citation and alteration omitted) ("If the terms in the policy are clear and unambiguous, the court must give them their plain, ordinary, and popular meaning."). However, courts construe ambiguous policy terms in favor of the insured. *Id.*; *Frankenmuth*, 595 N.W.2d at 837.

Michigan courts construe ambiguities liberally in favor of the insured. *U.S. Fid. & Guar. Co. v. Grp. Health Plan of S.E. Mich.*, 345 N.W.2d 683, 685–86 (Mich. Ct. App. 1983). Further, Michigan courts "strictly construe[]" "[c]lear and specific exclusionary clauses" in favor of the insured. *McKusick v. Travelers Indem. Co.*, 632 N.W.2d 525, 528 (Mich. Ct. App. 2001). Notably, Illinois courts liberally construe the entire insurance contract in the insured's favor. *Addison*, 905 N.E.2d at 753. It is with this framework in mind that the Court addresses Defendant's contention that Plaintiffs' allegations, accepted as true, do not establish coverage under the aforementioned Form provisions.

### 4.1    Business Income & Extra Expense Coverage Claims

As discussed in Sections 3.3 and 3.4 *supra*, to trigger coverage under the Business Income and Extra Expense provisions, Plaintiffs must have

sustained "direct physical loss or damage to" covered property. The Form does not define the terms "physical loss or damage to." Thus, in accordance with both Michigan and Illinois law, the Court looks to the dictionary to determine the plain and commonly understood meanings of those terms. *Twichel v. MIC Gen. Ins. Corp.*, 676 N.W.2d 616, 622 (Mich. 2004); *Founders Ins. Co. v. Munoz*, 930 N.E.2d 999, 1005 (Ill. 2010).

The parties supply the Court with multiple definitions for each term from the same source, Merriam-Webster's Online Dictionary. However, the parties do not argue over the meanings of the words "physical loss or damage to." Further, "[a] word is not rendered ambiguous . . . merely because a dictionary defines it in a variety of ways." *Koontz v. Ameritech Servs., Inc.*, 645 N.W.2d 34, 41 (Mich. 2002). Therefore, the Court takes judicial notice of the following definitions.[8]

When used as an adjective, the word "direct" means "stemming immediately from a source," and "marked by absence of an intervening agency, instrumentality, or influence."[9] The term "physical" is defined as "having material existence: perceptible especially through the senses and

---

[8] *See* Fed. R. Evid. 201(b)(2) ("The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."); *see also Winston v. Hepp*, Case No. 18-cv-1938-pp, 2020 WL 1509519, at *7 (E.D. Wis. Mar. 30, 2020) (declining to take judicial notice of judicial decisions proffered by petitioner because such decisions were "not capable of ready and accurate determination by a resort to sources whose accuracy cannot be questioned" such as "a dictionary or an almanac or an encyclopedia."); *Clark v. Walt Disney Co.*, 642 F.Supp.2d 775, 782 (S.D. Ohio 2009) (holding that the court could take judicial notice of dictionary definitions without converting a motion to dismiss into a motion for summary judgment because "a dictionary is one of those sources whose accuracy cannot reasonably be questioned . . . .").

[9] *Direct*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/direct (last visited Mar. 22, 2021).

subject to the laws of nature."[10] Another definition for "physical" is "of or relating to material things."[11] The first definition for the term "loss" is "destruction and ruin."[12] And lastly, the term "damage" is defined as the "loss or harm resulting from injury to person, property, or reputation."[13]

Plaintiffs claim that they have suffered a physical loss because, as a result of COVID-19 and the applicable state and local government orders, "the childcare centers are unable to use their interior spaces in the manner in which they had previously used those spaces." (Docket #18 at 2). According to Plaintiffs, "[t]he probability of illness prevents the use of the space in no less of a way than, on a rainy day, a crumbling and open roof from the aftermath of a tornado would make the interior space of a business unusable. The usable space has diminished." (*Id.* at 2–3). Plaintiffs assert that they have lost functionality of their spaces for business purposes and that their physical spaces have been diminished in a manner that qualifies as a "physical alteration." (*Id.* at 3). Plaintiffs also allege that the loss is a physical loss because "their property has become unsafe for its intended purpose," and "the presence of virus or disease has resulted in physical damage to property in this case."(*Id.* at 7–8).

Defendant argues that Plaintiffs have not sustained "direct physical loss or damage to property," warranting Defendant's coverage under the Business Income and Extra Expense provisions. (*See* Docket #22 at 10–20).

---

[10]*Physical*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/physical (last visited Mar. 22, 2021).

[11]*Id.*

[12]*Loss*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/loss (last visited Mar. 22, 2021).

[13]*Damage*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/damage (last visited Mar. 22, 2021).

The Court agrees, finding that Plaintiffs proffer an extremely tortured interpretation of the terms "physical loss of or damage to." The Court's determination appears to be in accord with both state and federal decisions interpreting Michigan law. For example, in *Universal Image Productions, Inc. v. Federal Insurance Company*, 475 F. App'x 569, 571–72 (6th Cir. 2012), the court evaluated whether the plaintiff, a tenant in a building that was contaminated with mold, odor, and bacteria, had suffered "direct physical loss or damage." Like Plaintiffs in this case, the plaintiff in *Universal* claimed it had lost business income under its insurance policy. *Id.* at 571. The plaintiff argued that it suffered a direct physical loss "because the mold, odor, and bacterial contamination rendered its building uninhabitable or substantially unusable," forcing the plaintiff's evacuation. *Id.* at 572. Ultimately, the Sixth Circuit determined that the plaintiff "did not experience any form of 'tangible damage' to its insured property," and noted that "not a single piece of [the plaintiff's] physical property was lost or damaged as a result of mold or bacterium contamination." *Id.* at 573. The court noted that even if Michigan had adopted "a more expansive definition"—which it did not—the plaintiff "would still not be entitled to coverage" because the plaintiff's covered property was not rendered uninhabitable or substantially unusable. *Id.* at 574.

More directly on point, in *Gavrilides Management Corporation v. Michigan Insurance Company*, a Michigan trial court determined that the plaintiff had not established that its covered property sustained "physical loss or damage" as the result of the governor's COVID-19 business closure order. Transcript of Hearing and Ruling on Defendant's motion for Summary Disposition, File No. 20-258-CB (Ingham Cnty. Cir. Ct. July 1, 2020). The trial court held that, based on the common meanings of those

terms, as well as the court's review of federal case law, "physical loss of or damage to the property has to be something with material existence." *Id.* at 18. The court explained that those terms require "[s]omething that is tangible. Something . . . that alters the physical integrity of the property." *Id.* at 19. The court found that the plaintiff did not allege that COVID-19 entered his premises or was ever present therein, but only that he lost business due to the executive orders requiring him to shut down. Based on the foregoing, the court determined that "there simply are no allegations of direct physical loss of or damage" to the plaintiff's covered premises and granted the defendant's motion for summary disposition. *Id.*

Similarly, the Illinois Supreme Court concluded that "to the average, ordinary person, tangible property suffers a 'physical' injury when the property is altered in appearance, shape, color, or in other material dimension. Conversely, to the average mind, tangible property does not experience 'physical' injury if that property suffers intangible damage." *Travelers Ins. Co. v. Eljer Mfg., Inc.*, 757 N.E.2d 481, 496 (Ill. 2001). While *Travelers* does not interpret the exact phrase at issue in this case, the Court finds it likely that, pursuant to the Illinois Supreme Court's interpretation of the terms "physical injury," Plaintiffs have not alleged "physical loss or damage to" their covered premises. *See also Sandy Point Dental, PC v. Cincinnati Ins. Co.*, Case No. 20 CV 2160, 2020 WL 5630465, at *2–*3 (N.D. Ill. Sept. 21, 2020) (granting the defendant's motion to dismiss after determining, under Illinois law, that the plaintiff, who sought coverage as a result of COVID-19 closure orders, had failed to plead a direct physical

Case 2:20-cv-00720-JPS   Filed 03/26/21   Page 13 of 21   Document 44

loss because "the coronavirus does not physically alter the appearance, shape, color, structure, or other material dimension of the property.")[14]

Plaintiffs aver that Defendant's interpretation of the terms at issue requires Plaintiffs to allege a "structural alteration." (*See* Docket #28 at 14). However, the Court agrees that Plaintiffs mischaracterize Defendant's argument. While Plaintiffs are not necessarily required to show that COVID-19 altered the structure of their property, they must allege that COVID-19 caused a direct material, tangible, corporeal, or perceptible, loss of or damage to their covered premises. The Court finds that Plaintiffs have not sufficiently pleaded relevant facts supporting such allegations.

Plaintiffs argue that they have pleaded structural alteration by alleging (1) infestation by a harmful agent and (2) diminishment of functional space and loss of covered property.[15] (*Id.* at 11–17). However, the Court finds that Plaintiffs have neither alleged that COVID-19 infested, nor

---

[14]Plaintiffs cite *One Place Condominium, LLC v. Travelers Property Casualty Company of America*, No. 11 C 2520, 2015 WL 2226202, at *9 (N.D. Ill. Apr. 22, 2015) to support the proposition that, under Illinois law, "'physical damage may take the form of loss of use of otherwise undamaged property, which in turn suffices as a covered loss." However, Plaintiffs omit the first part of that quote, which notes the precariousness of the plaintiff's reliance on those decisions. *See id.* ("[A]t best [the cases cited by the plaintiff] reflect that where a general all-risk commercial . . . policy insures against both 'loss' and 'damage' to an existing structure, 'physical damage may take the form of loss of use of otherwise undamaged property, which in turn suffices as a covered loss.") (emphasis added). Further, Plaintiffs did not provide this Court with the authority referenced in *One Place* that might, at best, potentially support their proposition that a loss of use might be a covered physical loss of or damage to property.

[15]Plaintiffs provide a number of fact-finding determinations issued by various legislative and executive bodies throughout the United States that "make clear that COVID-19 results in direct physical loss or damage." (Docket #18 at 8–9, #28 at 21). However, taken as true, (1) none of those determinations are from either Michigan, Illinois, or Skokie and (2) the accuracy of those determinations is questionable.

diminished their covered properties. Plaintiffs point to their allegations that, "if they were to conduct business as usual, the disease and the virus would show up and children would get sick" making their spaces not functional for business purposes. (Docket #28 at 23–24). Such allegations are both speculative and conclusory. Because Plaintiffs have not sufficiently pleaded "direct physical loss of or damage to" their premises as a result of COVID-19 or the relevant closure orders, they do not qualify for Business Income or Extra Expense coverage. Thus, the Court grants Defendant's motion to dismiss as to Plaintiffs' claims under those provisions.

### 4.2    Civil Authority Coverage Claims

Next, the Court addresses whether Plaintiffs have sufficiently pleaded a claim for relief under the Civil Authority coverage provision. To trigger such coverage, there must be damage to property other than Plaintiffs' covered premises, caused by a Covered Cause of Loss. As the result of such damage to other property, a civil authority must have taken action to prohibit access to the covered premises because it is within a mile of the damaged property. Further, the civil authority must have acted in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused such damage. (Docket #18-1 at 30).

Plaintiffs allege that "COVID-19 caused direct physical loss or damage to property near the Covered Property in the same manner that it caused direct physical loss or damage to the Covered Property." (Docket #18 at 19). Further, according to Plaintiffs, the civil authority orders were actions taken in response to the dangerous physical conditions resulting from the direct physical loss or damage to such properties." (*Id.*) As discussed in Section 4.1 *supra*, the Court rejects Plaintiffs' arguments that

they suffered "physical loss or damage to" their covered premises as the result of COVID-19. Thus, Plaintiffs' allegations of the same type of damage to property near the insured premises are based on facts that this Court has already determined do not constitute physical loss or damage.

Plaintiffs rely on *Sloan v. Phoenix of Hartford Insurance Company*, 207 N.W.2d 434 (Mich. Ct. App. 1973), to support the proposition that non-structural damage is sufficient to trigger civil authority coverage. The insurance policy at issue in *Sloan* "extended to include the actual loss . . . during the period of time . . . when as a direct result of the peril(s) insured against, access to the premises described is prohibited by order of civil authority." *Id.* at 436. The court found that, although there was not physical damage to the plaintiff's theatre, the plaintiff's loss of income was covered because a civil authority shut down the plaintiff's covered premises as the result of a riot. Notably, a riot was a specifically insured peril under the policy.

Plaintiffs argue that, in light of *Sloan*, physical damage is not required to trigger civil authority coverage. However, in *Sloan*, the civil authority provision makes no mention of the term "damage" whatsoever. Pursuant to the provision in *Sloan*, civil authority coverage was triggered when (1) a specific, insured peril occurred, which caused (2) an order from a civil authority, and as a result of that order (3) the plaintiff was unable to access his or her premises, (4) causing actual loss. The court found that because the provision did not require physical damage to the covered property, the policy covered the plaintiff's losses. *Id.* 436–37. Unlike *Sloan*, the provision in the Form does require damage, whether it be physical or non-physical, to a non-covered property. Moreover, to trigger Civil

Authority coverage, the relevant civil authority must prohibit access as the result of damage to a non-covered property.

Plaintiffs allege, in a conclusory fashion, that the Michigan, Illinois, and Skokie orders "were actions taken in response to the dangerous physical conditions resulting from the direct physical loss or damage to such properties." (Docket #18 at 19). However, those orders were not issued in response to such alleged damage at property near Plaintiffs' covered premises.[16,17] Those civil authorities took action in response to the impact of COVID-19 on both a local and statewide basis, not in direct response to

---

[16]*See, e.g., Gov. Whitmer's Exec. Order No. 2020-21, Temporary Requirement to Suspend Activities That Are Not Necessary to Sustain or Protect Life* (Mar. 23, 2020), *available at* https://www.michigan.gov/whitmer/0,9309,7-387-90499_90705-522576- -,00.html ("To mitigate the spread of COVID-19, protect the public health, and provide essential protections to vulnerable Michiganders, it is reasonable and necessary to impose limited and temporary restrictions on the use of places of public accommodations."); *Gov. Pritzker's Exec. Order 2020-10, Executive Order in Response to COVID-19 (COVID-19 Exec. Order No. 8)* (Mar. 20, 2020), *available at* https://www2.illinois.gov/Pages/Executive-Orders/ExecutiveOrder2020-10.aspx ("WHEREAS, for the preservation of public health and safety throughout the entire State of Illinois, and to ensure that our healthcare delivery system is capable of serving those who are sick, I find it necessary to take additional measures consistent with public health guidance to slow and stop the spread of COVID- 19[.]"); *Village of Skokie Order #566329* (Mar. 23, 2020) *available at https://www.skokie.org/DocumentCenter/View/3128/VOS-Emergency-Childcare- Centers-and-Childcare-Homes-PDF?bidId=* ("As you are aware, in order to limit the spread of COVID-19, all childcare centers and childcare homes within the Village of Skokie were closed by order effective March 20, 2020.").

[17]Plaintiffs refer to and quote from, but do not attach, the relevant local and state orders in their pleadings. (*See* Docket #18 at 11–12). However, due to Plaintiffs' reliance on the same, the Court treats them as a part of the complaint. Further, "[w]hen a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations." *N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 454 (7th Cir. 1998). Those orders do not suggest that Michigan, Illinois, or the Village of Skokie shut down businesses due to damage at properties near Creative Paths's or Paradigm Care's covered properties.

damage at a property within a mile of Plaintiffs' premises. Notably, Plaintiffs acknowledge this fact in their pleadings. (*See id.* at 12) ("The Michigan and Illinois Closure Orders were issued in response to the spread of COVID-19 throughout those states, and the Village of Skokie Closure Order was issued in response to the spread of COVID-19 throughout that locality.").[18]

Because Plaintiffs have not alleged coverage pursuant to the Civil Authority provision, the Court must grant Defendant's motion to dismiss for failure to state a claim under the same.

### 4.3    Communicable Disease Coverage

Next, the Court addresses Plaintiffs' argument that Defendant improperly denied their claims for Communicable Disease coverage. To reiterate, such coverage applies to Plaintiffs' actual loss of Business Income or Extra Expense *if* a governmental board or board of health shuts down Plaintiffs' covered premises *due to* an outbreak of a "communicable disease" at the premises. First, Plaintiffs argue that they sufficiently pleaded an

---

[18]The parties argue whether the relevant civil authorities truly "prohibited" Plaintiffs' access to their covered properties because Plaintiffs were able to use their premises if they provided day care services to the children of essential workers. *Compare Studio 417, Inc. v. Cincinnati Ins. Co.*, 478 F. Supp. 3d 794, 803 (W.D. Mo. 2020) (finding that the plaintiffs sufficiently alleged that a civil authority prohibited the plaintiffs' access to their facilities because the civil authority required the suspension of operations at a hair salon and prohibited seating at a restaurant, with limited exceptions), *with Sandy Point Dental*, 2020 WL 5630465, at *3 (finding that the plaintiffs had not sufficiently alleged that a civil authority prohibited access to the plaintiffs' property because "plaintiff concede[d] that dental offices were deemed essential businesses for emergency and non-elective work."). Because the Court determines that, in this case, Plaintiffs have failed to allege that civil authorities acted in response to dangerous physical conditions resulting from damage to other property located in within a mile of Plaintiffs' premises, the Court does not evaluate the parties' arguments concerning whether the civil authorities prohibited Plaintiffs from accessing their facilities.

outbreak at their covered premises. Second, Plaintiffs state that Defendant failed to cite authority to support its "proposition that [the terms] 'at the insured premises' must be read so narrowly and so against the interests of the policyholder that a nationwide pandemic clearly alleged to have affected [Plaintiffs'] operations somehow excludes premises affected by the shutdown orders within their geographic areas."(Docket #28 at 33). The Court finds that Plaintiffs' contentions gloss over the plain meaning of the terms of the Communicable Disease provision. Further, Plaintiffs have not provided the Court with authority suggesting that the terms "outbreak . . . at the insured premises" would encompass communicable disease outbreaks at non-insured properties affected by the shutdown orders in the applicable geographic areas.

Surely, Plaintiffs have not sufficiently alleged that there was a COVID-19 outbreak at Paradigm Care. But Plaintiffs alleged that one active enrollee at Creative Paths tested positive for COVID-19 shortly after Creative Paths closed. Thus, drawing all reasonable inferences in Plaintiffs' favor, the Court could reasonably infer that the active enrollee at Creative Paths was exposed to COVID-19 at its premises. Defendant's argument that the active enrollee tested positive *after* the Illinois and Skokie closure orders took effect is unavailing, as COVID-19 symptoms may appear 2–14 days after one's exposure to the virus.[19] Nevertheless, Plaintiffs failed to allege that the government shut down their respective facilities *due to an outbreak* of COVID-19 at the same. As discussed in Section 4.2 *supra*, neither

---

[19] Ctrs. for Disease Control and Prevention, *COVID-19, Symptoms of Coronavirus* (updated Feb. 21, 2021), https://www.cdc.gov/coronavirus/2019-ncov/symptoms-testing/symptoms.html ("Symptoms may appear 2-14 days after exposure to the virus.")

Michigan, nor Illinois, nor the Village of Skokie issued their orders in direct response to a COVID-19 outbreak at either Paradigm Care or Creative Paths. Thus, based on Plaintiffs' allegations in their amended complaint, the Court finds that the terms of the Form preclude Plaintiffs' claims for Communicable Disease coverage.

### 4.4    Duties in the Event of Loss or Damage

Lastly, the Court addresses Plaintiffs' claims for coverage under the Duties Section. This section outlines a list of nine actions that policyholders must take "in the event of loss or damage to Covered Property." (Docket #18-1 at 59). Plaintiffs aver that Defendant failed to provide coverage pursuant to the fourth outlined duty, which (1) requests that policyholders "keep record of [] expenses necessary to protect Covered Property, for consideration in the settlement of the claim," and (2) notes that keeping such records "will not increase the Limit of Insurance." (*Id.*) Defendant argues that this section does not provide coverage, but instead imposes a duty on the insured. The Court agrees. But *even if* the Court entertained Plaintiffs' argument that the Duties Section granted coverage, Plaintiffs have not sufficiently alleged loss or damage warranting such coverage. *See supra* Section 4.1. In the end, Plaintiffs failed to allege facts demonstrating that they took steps or incurred expenses to protect Covered Property. Rather, Plaintiffs' allegation that they "incurred expenses in connection with reasonable steps to protect Covered Property" is conclusory and, thus, wholly insufficient. (*See* Docket #18 at 22).

### 5.    CONCLUSION

Based on the foregoing, the Court grants Defendant's motion to dismiss Plaintiffs' amended complaint, (Docket #21), and will dismiss this case with prejudice. At this juncture, the Court will deny as moot

Defendant's motion to strike class allegations in Plaintiffs' amended complaint, (Docket #23). Finally, given the dismissal of this action, the Court will deny as moot Plaintiffs' motions to consolidate cases, (Docket #36), and to appoint class counsel, (Docket #38).

Accordingly,

**IT IS ORDERED** that Defendant's motions to dismiss Plaintiffs' initial complaint (Docket #13) and to strike Plaintiffs' class allegations therein (Docket #15) be and the same are hereby **DENIED as moot**;

**IT IS FURTHER ORDERED** that Defendant's motion to dismiss Plaintiffs' amended complaint (Docket #21) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Defendant's motion to strike Plaintiffs' class allegations in Plaintiffs' amended complaint (Docket #23) be and the same is hereby **DENIED as moot**;

**IT IS FURTHER ORDERED** that Plaintiffs' motions to consolidate cases (Docket #36) and to appoint class counsel (Docket #38) be and the same are hereby **DENIED as moot**; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED with prejudice**.

The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 26th day of March, 2021.

BY THE COURT:

_____

J. P. Stadtmueller
U.S. District Judge